UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

STEPHEN MICHAEL ROBBINS,                    Case No.: 6:14-bk-11743-KSJ
KIMBERLY WALTERS ROBBINS,                   Chapter 7

      Debtors

_____/

MOTION FOR RELIEF FROM STAY FILED BY GREEN TREE SERVICING LLC

---

**NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party-in-interest files a response within twenty-one (21) days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at U.S. Bankruptcy Court, Middle District of Florida, 400 West Washington Street, Suite 5100, Orlando, FL 32801 and serve a copy on the movant's attorney, Evan S. Singer, Esq., Timothy D. Padgett, Esquire, Timothy D. Padgett, P.A., 6267 Old Water Oak Road, Suite 203, Tallahassee, FL 32312, and any other appropriate persons within the time allowed.**

**If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Comes now, Green Tree Servicing LLC, hereinafter referred to as "Movant", seeking modification of the automatic stay in this case in order to exercise any and all rights Movant may have in the collateral described below, or in the alternative, adequate protection, and for cause would show the Court as follows:

1.      On October 20, 2014 Stephen Michael Robbins and Kimberly Walters Robbins (hereinafter referred to as "Debtors," collectively or singular), filed for relief under Chapter 7 of the Bankruptcy Code.

2.     Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. 1334, 11 U.S.C. 362 and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3.     Debtors executed a Note and Mortgage (hereinafter referred to as "Agreement") in the principal amount $140,000.00 together with interest thereon as set forth therein.  Movant is the holder of a Note and is the mortgagee of record regarding a Mortgage securing the Note and encumbering certain property as more fully described in this Motion for Relief from Stay. A copy of the Mortgage, together with the Note and any applicable Assignment of Mortgage are attached hereto as Exhibit "A".

4.     Funds were advanced in connection with the aforementioned agreement as purchase money for the following real property:

**REAL PROPERTY AT 8281 TANSY DRIVE, ORLANDO, FLORIDA 32819, AND MORE ACCURATELY DESCRIBED BY ITS LEGAL DESCRIPTION WHICH IS:**

ALL THAT PARCEL OF LAND IN CITY OF ORLANDO, ORANGE COUNTY, STATE OF FLORIDA, AS MORE FULLY DESCRIBED IN DEED OR BOOK 5984, PAGE 4666, ID# 22-23-28-7810-03-530, BEING KNOWN AND DESIGNATED AS LOT 353, SAND LAKE HILLS SECTION 3, FILED IN PLAT BOOK 7, PAGE 55 & 56 .

BY FEE SIMPLE DEED FROM LINDA R. ROBBINS, SINGLE AS SET FORTH IN DEED OR BOOK 5984, PAGE 4666 DATED 12/30/1997 AND RECORDED 04/18/2000, ORANGE COUNTY RECORDS, STATE OF FLORIDA.

THE COVERAGES PROVIDED BY THE CLOSING PROTECTION LETTER PRINTED ON THE INSIDE COVER OF THIS COMMITMENT ARE EXTENDED TO THE PROPOSED INSURED LENDERS IDENTIFIED HEREIN AND TO THEIR BORROWER AS APPLICABLE UNDER RULE 4-186, FLORIDA ADMINISTRATIVE CODE

5.     The terms of the aforementioned Agreement entitle Movant to possession of the collateral upon Default.  The Movant has declared the Debtors in Default.

6.     Movant now holds equitable title to the collateral as a result of the terms of the Agreement.

7.     Debtors have defaulted under the terms of the Agreement by failing to make the payments as required under the Agreement.  The account is currently due for the June 1, 2010 payment. The current delinquency is $56,982.29 through and including the October 1, 2014

payment. The current monthly post-petition payment is $1,189.73 which consists of principal, interest, escrow and advances.  The payoff is $178,683.86 as of October 24, 2014, and the per diem is $20.22, but Movant estimates the value of the property to be significantly less. Accordingly there is no equity or value to the estate. The Trustee has not abandoned an interest in the property, but the Debtors have claimed the property as exempt. The Debtors have indicated an intent to reaffirm the debt, but the Creditor has not agreed to reaffirmation and seeks relief from the Stay to negotiate with the Debtors for a mutually acceptable reaffirmation agreement, or alternatively, foreclose the property if a mutually acceptable reaffirmation agreement is not reached.

8.    Accordingly, Movant requests that the Court grant it relief from the Automatic Stay in this case pursuant to 362(d)(1) of the Bankruptcy Code for cause, namely, the lack of adequate protection to Movant for its interest in the collateral.  The value of the collateral is not sufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to Movant.

9.    In support of this Motion for Relief of the stay under 362(d) of the Bankruptcy Code, Movant would show that it would be inequitable to permit Debtors to retain the collateral, that there is no equity in the collateral and that said collateral is not necessary for an effective reorganization.  Additionally, Movant would show that Debtors have failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the Agreement.

10.    Movant submits that lack of adequate protection in this case is the appropriate ground for relief which Movant seeks under 362(d), and that the possible existence of equity over and above the indebtedness, which Movant denies exists, would not, even if it did exist, constitute adequate protection as contemplated by the Bankruptcy Code.  Additionally, Movant

would show that its indebtedness continues to accrue interest and the Debtors enjoy the benefits of collateral without following the requirements of the Bankruptcy Code.

11.   Secured Creditor has incurred attorneys' fees of $750.00 and costs in the amount of $176.00 as a result of the necessity of filing this Motion. Secured Creditor's attorneys' fees and costs are recoverable as part of the debt pursuant to the loan documents.

12.   Movant is receiving no payments from the Debtors to protect Movant against the erosion of its collateral position and Movant is not otherwise being adequately protected.

13.   If Movant is not permitted to enforce its security interest in the collateral or is not provided with adequate protection, it will suffer irreparable injury, loss and damage.

14.   Movant asserts that sufficient cause exists to waive the requirement of Bankruptcy Rule 4001(a)(3), therefore allowing any order entered to be effective upon execution since the collateral is easily moved, easily secreted, and easily damaged within the fourteen day period that would otherwise stay recovery of the collateral.  In addition, Movant prays that the Court suspend the Rule in all instances in which there is a consent on the part of the Debtors.

15.   All communications sent by Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement or other Loan Workout, may be sent directly to the Debtors.

16. Movant requests that should the Debtors convert this case to another chapter that relief awarded will survive any conversion made by the Debtors and will not be allowed to include the creditor in the Chapter 13 plan.

WHEREFORE, PREMISES CONSIDERED, Movant moves this Court to enter its order granting relief from stay to Movant and that the fourteen (14) days stay of the Order Granting Relief pursuant to Bankruptcy Rule 400l(a)(3) is waived so that, GREEN TREE SERVICING LLC, can pursue its in rem remedies without further delay and award bankruptcy fees and cost for the prosecution of this motion, that Movant may send communication to the Debtors in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement or other Loan Workout and may enter into such agreement with Debtors without violating any Discharge Order. However, Movant may not enforce any personal liability against Debtor if Debtor's personal liability is discharged in this bankruptcy case, that that relief awarded will survive any conversion made by the Debtor and will not be allowed to include the creditor in the Chapter 13 plan and granting such other relief as to the Court may deem just and proper.

DATED this 3rd day of November, 2014.

Respectfully submitted,

S/ Evan S. Singer

_____

Evan S. Singer
Fla. Bar ID: 101406
Timothy D. Padgett, P.A.
6267 Old Water Oak Road
Suite 203
Tallahassee, Florida 32312
(850) 422-2520 (telephone)
(850) 422-2567 (fax)
ess@padgettlaw.net

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3rd day of November, 2014, a true and correct copy of the foregoing was served by U.S. Mail, First Class, and/or electronic transmission to:

Debtor
Stephen Michael Robbins
8281 Tansy Drive
Orlando, FL 32819

Joint Debtor
Kimberly Walters Robbins
8281 Tansy Drive
Orlando, FL 32819

Attorney for Debtors
Barbara Billiot Stage
Law Offices of Stage & Associates P.A.
7635 Ashley Park Court
Suite 503-T
Orlando, FL 32819

Trustee
Dennis D Kennedy
P. O. Box 541848
Merritt Island, FL 32954

U.S. Trustee
United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

/s/ Evan S. Singer, Esq.

Evan S. Singer, Esq.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

STEPHEN MICHAEL ROBBINS,                    Case No.: 6:14-bk-11743-KSJ
KIMBERLY WALTERS ROBBINS,          Chapter 7

      Debtors

_____/

<u>AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF</u>

I, EMILY SECORD, hereby state the following:

1.     I am a duly authorized representative of GREEN TREE SERVICING LLC.  GREEN TREE SERVICING LLC is hereinafter referred to as "Movant." I hereby make this Affidavit based upon the foregoing capacity.

2.     Movant is authorized to do business in the State of Florida and to sue on its behalf.

3.     I am a Bankruptcy Representative for Movant and in the course of my employment, I have become familiar with the manner and method in which Movant maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty it is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

4.     I have reviewed the books and records which reveal that Movant is holder of a Note and is the mortgagee of record regarding a Mortgage securing the Note and encumbering certain property as more fully described in the Motion for Relief from Stay filed by Movant in this proceeding. The Note, Mortgage, and any applicable Assignment of Mortgage are hereinafter referred to as "Agreement.". Said Agreement is attached to the Motion for Relief from Stay as Exhibit "A." I certify that all documents attached as exhibits to the Motion for Relief from Stay are true and accurate copies of the original documents.

5.     Debtor is in default on the contractual obligations required by the Agreement in that Debtor has failed to make the installment payments when due and owing.

6.     The account is currently due for the June 1, 2010 payment. The current delinquency is $56,982.29 through and including the October 1, 2014 payment. The current monthly payment is $1,189.73 which consists of principal, interest, escrow and advances. The payoff is $178,683.86 as of October 24, 2014 and the per diem is $20.22, but Movant estimates the value of the property to be significantly less. Accordingly there is no equity or value to the estate.

7.     By failing to make regular monthly installment payments due pursuant to the Agreement, Debtor has failed to provide adequate protection Regular payments in the amount of $1,189.73 per month

would be considered by Movant to be fair and equitable as adequate protection pending final resolution of this motion for Relief from Stay, or in the alternative, for Adequate Protection. However, the delinquent amounts for all prior months through the present, together with a reasonable attorney's fee and filing fee, must also be paid. Debtor must also pay for the insurance premiums or provide proof of insurance on the collateral.

8.      Movant has had to retain counsel to represent it before this Court and is incurring legal expenses and attorney's fees for which it is entitled to reimbursement under the terms of the Agreement.

The foregoing facts are of my own personal knowledge and belief, and if called upon to appear as a witness, I could, and would, testify competently thereto. I declare under penalty of perjury that the foregoing facts are true and correct based on my personal knowledge of the Movant's books and business records.


EMILY SECORD


Executed this _____ day of October, 2014.


STATE OF SOUTH DAKOTA
COUNTY OF PENNINGTON

The foregoing instrument was acknowledged before me by EMILY SECORD, who is personally known to me or who has produced a driver's license as identification, who did take an oath, and is known to be the person described in and who executed the foregoing instrument, and acknowledged to and before me that he or she executed said document for the purposes therein expressed.

WITNESS my hand and official seal, this 31 October 2014.


NOTARY PUBLIC
Name Printed Perry Wade
My Commission Expires:
3/12/18

| Next Pmt | Due Less Late | P&I | Principal | Interest | Late | Ins | Adv | Opt Ins | True Escrow |
|---|---|---|---|---|---|---|---|---|---|
| 06/01/10 | 1058.57 | 828.16 | 213.37 | 614.79 | 0 | 0 | 0 | 0 | 230.41 |
| 07/01/10 | 1058.57 | 828.16 | 214.41 | 613.75 | 0 | 0 | 0 | 0 | 230.41 |
| 08/01/10 | 1058.57 | 828.16 | 215.46 | 612.7 | 0 | 0 | 0 | 0 | 230.41 |
| 09/01/10 | 1058.57 | 828.16 | 216.52 | 611.64 | 0 | 0 | 0 | 0 | 230.41 |
| 10/01/10 | 1058.57 | 828.16 | 217.58 | 610.58 | 0 | 0 | 0 | 0 | 230.41 |
| 11/01/10 | 1058.57 | 828.16 | 218.64 | 609.52 | 0 | 0 | 0 | 0 | 230.41 |
| 12/01/10 | 1058.57 | 828.16 | 219.71 | 608.45 | 0 | 0 | 0 | 0 | 230.41 |
| 01/01/11 | 1058.57 | 828.16 | 220.79 | 607.37 | 0 | 0 | 0 | 0 | 230.41 |
| 02/01/11 | 1058.57 | 828.16 | 221.87 | 606.29 | 0 | 0 | 0 | 0 | 230.41 |
| 03/01/11 | 1058.57 | 828.16 | 222.96 | 605.2 | 0 | 0 | 0 | 0 | 230.41 |
| 04/01/11 | 1058.57 | 828.16 | 224.05 | 604.11 | 0 | 0 | 0 | 0 | 230.41 |
| 05/01/11 | 1058.57 | 828.16 | 225.15 | 603.01 | 0 | 0 | 0 | 0 | 230.41 |
| 06/01/11 | 1058.57 | 828.16 | 226.25 | 601.91 | 0 | 0 | 0 | 0 | 230.41 |
| 07/01/11 | 1058.57 | 828.16 | 227.36 | 600.8 | 0 | 0 | 0 | 0 | 230.41 |
| 08/01/11 | 1058.57 | 828.16 | 228.47 | 599.69 | 0 | 0 | 0 | 0 | 230.41 |
| 09/01/11 | 1058.57 | 828.16 | 229.59 | 598.57 | 0 | 0 | 0 | 0 | 230.41 |
| 10/01/11 | 1058.57 | 828.16 | 230.71 | 597.45 | 0 | 0 | 0 | 0 | 230.41 |
| 11/01/11 | 1058.57 | 828.16 | 231.84 | 596.32 | 0 | 0 | 0 | 0 | 230.41 |
| 12/01/11 | 1058.57 | 828.16 | 232.98 | 595.18 | 0 | 0 | 0 | 0 | 230.41 |
| 01/01/12 | 1058.57 | 828.16 | 234.12 | 594.04 | 0 | 0 | 0 | 0 | 230.41 |
| 02/01/12 | 1058.57 | 828.16 | 235.26 | 592.9 | 0 | 0 | 0 | 0 | 230.41 |
| 03/01/12 | 1058.57 | 828.16 | 236.41 | 591.75 | 0 | 0 | 0 | 0 | 230.41 |
| 04/01/12 | 1058.57 | 828.16 | 237.57 | 590.59 | 0 | 0 | 0 | 0 | 230.41 |
| 05/01/12 | 1058.57 | 828.16 | 238.74 | 589.42 | 0 | 0 | 0 | 0 | 230.41 |
| 06/01/12 | 1058.57 | 828.16 | 239.9 | 588.26 | 0 | 0 | 0 | 0 | 230.41 |
| 07/01/12 | 1058.57 | 828.16 | 241.08 | 587.08 | 0 | 0 | 0 | 0 | 230.41 |
| 08/01/12 | 1058.57 | 828.16 | 242.26 | 585.9 | 0 | 0 | 0 | 0 | 230.41 |
| 09/01/12 | 1058.57 | 828.16 | 243.44 | 584.72 | 0 | 0 | 0 | 0 | 230.41 |
| 10/01/12 | 1058.57 | 828.16 | 244.64 | 583.52 | 0 | 0 | 0 | 0 | 230.41 |
| 11/01/12 | 1058.57 | 828.16 | 245.83 | 582.33 | 0 | 0 | 0 | 0 | 230.41 |
| 12/01/12 | 1058.57 | 828.16 | 247.04 | 581.12 | 0 | 0 | 0 | 0 | 230.41 |
| 01/01/13 | 1058.57 | 828.16 | 248.25 | 579.91 | 0 | 0 | 0 | 0 | 230.41 |
| 02/01/13 | 1058.57 | 828.16 | 249.46 | 578.7 | 0 | 0 | 0 | 0 | 230.41 |
| 03/01/13 | 1058.57 | 828.16 | 250.68 | 577.48 | 0 | 0 | 0 | 0 | 230.41 |
| 04/01/13 | 1058.57 | 828.16 | 251.91 | 576.25 | 0 | 0 | 0 | 0 | 230.41 |
| 05/01/13 | 1058.57 | 828.16 | 253.14 | 575.02 | 0 | 0 | 0 | 0 | 230.41 |
| 06/01/13 | 1058.57 | 828.16 | 254.38 | 573.78 | 0 | 0 | 0 | 0 | 230.41 |
| 07/01/13 | 1058.57 | 828.16 | 255.63 | 572.53 | 0 | 0 | 0 | 0 | 230.41 |
| 08/01/13 | 1058.57 | 828.16 | 256.88 | 571.28 | 0 | 0 | 0 | 0 | 230.41 |
| 09/01/13 | 1058.57 | 828.16 | 258.14 | 570.02 | 0 | 0 | 0 | 0 | 230.41 |
| 10/01/13 | 1058.57 | 828.16 | 259.4 | 568.76 | 0 | 0 | 0 | 0 | 230.41 |
| 11/01/13 | 1058.57 | 828.16 | 260.67 | 567.49 | 0 | 0 | 0 | 0 | 230.41 |
| 12/01/13 | 1058.57 | 828.16 | 261.95 | 566.21 | 0 | 0 | 0 | 0 | 230.41 |
| 01/01/14 | 1065.15 | 828.16 | 263.23 | 564.93 | 0 | 0 | 6.58 | 0 | 230.41 |
| 02/01/14 | 1065.15 | 828.16 | 264.52 | 563.64 | 0 | 0 | 6.58 | 0 | 230.41 |
| 03/01/14 | 1065.15 | 828.16 | 265.81 | 562.35 | 0 | 0 | 6.58 | 0 | 230.41 |
| 04/01/14 | 1065.15 | 828.16 | 267.12 | 561.04 | 0 | 0 | 6.58 | 0 | 230.41 |
| 05/01/14 | 1065.15 | 828.16 | 268.42 | 559.74 | 0 | 0 | 6.58 | 0 | 230.41 |
| 06/01/14 | 1065.15 | 828.16 | 269.74 | 558.42 | 0 | 0 | 6.58 | 0 | 230.41 |
| 07/01/14 | 1065.15 | 828.16 | 271.06 | 557.1 | 0 | 0 | 6.58 | 0 | 230.41 |
| 08/01/14 | 1090.15 | 828.16 | 272.39 | 555.77 | 0 | 0 | 31.58 | 0 | 230.41 |
| 09/01/14 | 1189.65 | 828.16 | 273.72 | 554.44 | 0 | 0 | 131.08 | 0 | 230.41 |
| 10/01/14 | 1189.73 | 828.16 | 275.06 | 553.1 | 0 | 0 | 131.16 | 0 | 230.41 |
| late fees | 538.20 | | | | | | | | |

total due        56,982.29

DOC # 20140069151 B: 10709 P: 7147
Rec Fee: $10.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

When Recorded Return To:
Green Tree Servicing LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



Effective Date 02/01/2013

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, GMAC MORTGAGE, LLC, WHOSE ADDRESS IS 1100 VIRGINIA DR, FORT WASHINGTON, PA, 19034-3200 (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over, the remaining Mortgage with all interest secured thereby, all liens, and any rights accrue to become due thereon to GREEN TREE SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 7360 SOUTH KYRENE RD, 1314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage was made by STEPHEN M ROBBINS AND KYMBERLY W ROBBINS and recorded in Official Records of the Clerk of the Circuit Court of ORANGE County, Florida, in Book 09226, Page 1791, and/or Instrument # XXX BOOK/PAGE, upon the property situated in said State and County as more fully described in said Mortgage.

Dated this 06th day of February in the year 2014
GMAC MORTGAGE, LLC, by GREEN TREE SERVICING LLC, its Attorney-in-Fact

**DANIEL THOMPSON**
**VICE PRESIDENT**

All authorized signatories whose signatures appear above are employed by NTC and have reviewed this document and supporting documentation prior to signing.

CORPORATE
SEAL

**TYLER DRIVER**
**WITNESS**

**NADINE HOMAN**
**WITNESS**

Document Prepared By: R. Lance/N TC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152



Effective Date 02/01/2013

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 06th day of February in the year 2013, by Daniel Thompson as VICE PRESIDENT of GREEN TREE SERVICING, LLC as Attorney in Fact for GMAC MORTGAGE, LLC, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she is/are personally known to me.

NICOLE BALDWIN - NOTARY PUBLIC
COMM EXPIRES: 08/05/2016



Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Document Prepared By: E. Lance'N PC, 2600 Alt. 19 North, Palm Harbor, FL 34683 (800)646-9152



When recorded mail to:
Home Connects
100 Lakeside Drive, Horsham, PA 19044

INSTR 20030710597
OR BK 07226 PG 4701
 MARTHA O. HAYNIE, COMPTROLLER
 ORANGE COUNTY, FL
 12/10/2003 03:36:26 PM
 MTG DOC TAX 490.00
 INTANG TAX 280.00
 REC FEE 78.00

This document was prepared by:
Joan Taylor

200 Century Parkway
Mount Laurel, NJ 08054

───────────────────[Space Above This Line For Recording Data]───────────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated 11/06/2003 ,
together with all Riders to this document.
(B) "Borrower" is Stephen M Robbins and  Kimberly W Robbins, Husband and Wife

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is GMAC Mortgage Corporation

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010 1/01

VMP®-6A(FL) (0005)
Page 1 of 18          Initials: 
    VMP MORTGAGE FORMS - (800)521-7291

Lender is a Residential Mortgage Lender
organized and existing under the laws of Commonwealth of Pennsylvania
Lender's address is 200 Century Parkway, Mount Laurel, NJ 08054

(E) "Note" means the promissory note signed by Borrower and dated 11/06/2003
The Note states that Borrower owes Lender One Hundred Forty Thousand

Dollars

(U.S. $140,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2033

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.



-6A(FL) (0005)          Page 2 of 16          Initials: SF  KR          Form 3010  1/01

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County           [Type of Recording Jurisdiction]
of Orange                                                                                   [Name of Recording Jurisdiction]:
See legal description attached

Parcel ID Number:                                                         which currently has the address of
8281 Tansy Drive                                                                                         [Street]
Orlando                                                        [City], Florida  32819-          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005)                                    Page 3 of 18                      Initials: _SL_                      Form 3010  1/01
                                                                                                        KR

INSTR 20030710597
OR BK 06271 PG 4704

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment



-6A(FL) (0005)                    Page 4 of 16                    Initials: ____    Form 3010  1/01

INSTR 20030710597
OR BK 07226 PG 4705

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest



shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



-6A(FL) (0005)

Page 6 of 18

Initials: _SC_
KR

Form 3010   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.



Page 7 of 16

Initials: _SL_
_KR_

Form 3010   1/01

INSTR 20030710597
OR BK 07126 PG 4708

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



-6A(FL) (0005)                    Page 8 of 16                    Initials: _SR_ _KR_            Form 3010  1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



-6A(FL) (0005)

Page 9 of 18

Initials: _SF_
_KR_

Form 3010   1/01

INSTR 20030710597
OR BK 07226 PG 4710

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers



Initials: SC
KR

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6A(FL) (0005)    Page 14 of 16    Initials: _____    Form 3010  1/01

KR

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
Witness: Wendy J. Pearce

_____ (Seal)
Stephen Robbins                  -Borrower

_____
Witness: Mandy Keller

                                 (Address)

_____ (Seal)
Kimberly Robbins                 -Borrower

                                 (Address)

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

            (Address)                               (Address)

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

            (Address)                               (Address)

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

            (Address)   8281 TANSY DRIVE
                        ORLANDO, FL. 32819         (Address)

Segments

**STATE OF FLORIDA,**
                                        County ss: ORANGE
   The foregoing instrument was acknowledged before me this   6 NOVEMBER, 2003  by

STEPHEN ROBBINS AND KIMBERLY ROBBINS
HUSBAND AND WIFE
who is personally known to me or who has produced FL DRIVERS LICENSE as identification.



Notary Public

WENDY J. PEARCE
MY COMMISSION # DD 110779
EXPIRES: April 22, 2006
Bonded Thru Notary Public Underwriters



ORDER #: 3741833

# EXHIBIT A

ALL THAT PARCEL OF LAND IN CITY OF ORLANDO, ORANGE COUNTY, STATE OF FLORIDA, AS MORE FULLY DESCRIBED IN DEED OR BOOK 5984, PAGE 4666, ID# 22-23-28-7810-03-530, BEING KNOWN AND DESIGNATED AS LOT 353, SAND LAKE HILLS SECTION 3, FILED IN PLAT BOOK 7, PAGE 55 & 56 .

BY FEE SIMPLE DEED FROM LINDA R. ROBBINS, SINGLE AS SET FORTH IN DEED OR BOOK 5984, PAGE 4666 DATED 12/30/1997 AND RECORDED 04/18/2000, ORANGE COUNTY RECORDS, STATE OF FLORIDA.

THE COVERAGES PROVIDED BY THE CLOSING PROTECTION LETTER PRINTED ON THE INSIDE COVER OF THIS COMMITMENT ARE EXTENDED TO THE PROPOSED INSURED LENDERS IDENTIFIED HEREIN AND TO THEIR BORROWER AS APPLICABLE UNDER RULE 4-186, FLORIDA ADMINISTRATIVE CODE

# NOTE

November 6, 2003          Orlando                                    Florida
    [Date]                        [City]                                    [State]

8281 Tansy Drive, Orlando, FL  32819

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 140,000.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875       %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First      day of each month beginning on January 1, 2004      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2033      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 17595 Harvard Ave C1002, Irvine, CA  92614

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 828.16       .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(FL) (0005)                Form 3210 1/01
    VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                Initials:



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000         % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3210 1/01

Initials: _____

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ 11/6/03 (Seal)        _____ 11/6/03 (Seal)
Stephen Robbins           -Borrower              Kimberly Robbins          -Borrower

_____ (Seal)                _____ (Seal)
                         -Borrower                                        -Borrower

## PAY TO THE ORDER OF

                                                WITHOUT RECOURSE
_____ (Seal)                GMAC MORTGAGE CORPORATION    _____ (Seal)
                         -Borrower                                        -Borrower

                                                J. Vollmer
                                                Limited Signing Officer

_____ (Seal)                _____ (Seal)
                         -Borrower                                        -Borrower

*[Sign Original Only]*